449 P.2d 346

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**George ORTEGA, Defendant-Appellant.**

**No. 226.**

Court of Appeals of New Mexico.

Dec. 20, 1968.

George F. Stevens, Albuquerque, for appellant.

Boston E. Witt, Atty. Gen., Spencer T. King, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

OMAN, Judge.

Defendant was indicted by a grand jury for the crime of armed robbery. He was tried for armed robbery, and the question of his guilt was submitted to the jury by the court's instructions.

One of the two victims of the armed robbery was a Mrs. Bowen. She was a witness for the State. The other victim was unavailable at the time of trial.

The robbery was committed by two men. One of them wore a mask, but Mrs. Bowen tentatively identified him as a Mr. Montano, whom she had previously known. He was later charged and pled guilty to armed robbery.

Mrs. Bowen's tentative identification of Montano, coupled with the description of the other robber obtained from her and the other victim, and the fact that defendant was known to the police to be a friend of Montano, caused the police to suspect defendant.

Within a day or two of the robbery, Mrs. Bowen was shown five photographs. One of these photographs was of each of defendant's two brothers, who resemble him, a photograph of defendant, and photographs of two other men. Mrs. Bowen selected the photograph of defendant as being that of the unmasked robber.

Shortly after she was shown the photographs, she viewed a police lineup of some four to seven men. Defendant was not among them, and Mrs. Bowen did not identify any of them as the unmasked robber.

A day or two later she viewed another police lineup consisting of four Spanish-American men. Defendant was one of them, and Mrs. Bowen immediately identified him as the robber.

Just before the commencement of the trial, defendant's attorney pointed out a man to Mrs. Bowen on a stairway in the courthouse and asked if he was the robber. She answered: "He looks like him, but that is not him. I am positive."

They then entered the courtroom where defendant was, and Mrs. Bowen said, "That's the man."

The robbery took place at a motel operated by Mrs. Bowen. Next to the motel office were her living quarters consisting of a living room, a den and two bedrooms. The robbers took money from the office and the two victims. They also took a television set, a sewing machine, a portable typewriter, and other items from the living quarters. The unmasked robber searched all four rooms in the living quarters and Mrs. Bowen was with him in all but one of these rooms.

This unmasked robber carried a gun, which he pointed at both victims. He ordered the victims into one of the bedrooms. He then tore strips from a bed sheet with which he tied and gagged the other victim. Mrs. Bowen resisted his efforts to tie her, so he struck her with a blackjack, which he was carrying. The two robbers then tied and gagged her.

The description reportedly taken by the police from Mrs. Bowen and the other victim immediately after the robbery differed in some respects from the actual appearance of defendant, but she denied having furnished the police with the descriptive matters which were incorrect, except perhaps for the color or style of two or three articles of his clothing. In any event, she was examined and cross-examined about her identification of defendant, and she was very positive that he was the unmasked robber.

The officer who supervised the lineup, at which defendant was present and identified by Mrs. Bowen, testified that defendant was first asked if he had any objections to standing in a lineup, and was advised that he had the right to have an attorney present during the course of the lineup if he so desired. Defendant stated he did not wish an attorney and would willingly stand in the line.

No objections were made to the admission of the testimony of Mrs. Bowen and the officer concerning the photographic and lineup identifications.

The court instructed the jury that if it should find from the evidence that defendant did not intelligently waive his right to have his lawyer present at the lineup, and that if it should further find that the identification of defendant in court by Mrs. Bowen was based in part upon her identification of defendant in the lineup, then the jury should completely disregard her testimony concerning identification. This instruction was almost identical with a request submitted by defendant. Defendant made no objections to the court's instructions.

At the close of the evidence, defendant moved for a directed verdict on the basis that the identification testimony of Mrs. Bowen was so doubtful as to be insubstantial. As his first ground of attack, defendant contends that the trial court erred in denying this motion.

■ Defendant recognizes that, in determining the sufficiency of the evidence to support a guilty verdict, this court views the evidence in the light most favorable to the State, and resolves all conflicts and permissible inferences in favor of the verdict. State v. Torres, 78 N.M. 597, 435 P.2d 216 (Ct.App.1967); State v. Hinojos, 78 N.M. 32, 427 P.2d 683 (Ct.App.1967).

■ However, he argues that the identification here was so doubtful that the doctrine of fundamental error, as set forth in State v. Salazar, 78 N.M. 329, 431 P.2d 62 (1967), is applicable and requires a reversal of the judgment of conviction. We disagree.

■ The most that can be said, in support of defendant's contention of doubt as to the identification of him as the unmasked robber, is that Mrs. Bowen's description of the unmasked robber given to the police did

not fit the actual appearance of defendant and his clothing in all particulars. These discrepancies did not strip her testimony of all substance. The in-court identification of defendant by Mrs. Bowen was very positive.

■■ If evidence is acceptable to a reasonable mind as adequate support for a conclusion, then it is substantial. State v. Manlove, 79 N.M. 189, 441 P.2d 229 (Ct. App.1968). We have no difficulty whatever in finding the evidence as to identification to be substantial. All the evidence on this issue was before the jury, and they believed in the accuracy of Mrs. Bowen's identification of defendant. This was an issue for the jury's determination. State v. Williamson, 78 N.M. 751, 438 P.2d 161 (1968).

Defendant next contends: "The verdict of the jury finds the defendant guilty of no crime and the trial court was without jurisdiction to sentence the defendant."

This contention is predicated upon the fact that the last word in the verdict returned by the jury is "information," rather than "indictment."

In the instructions the court, at times, referred to the form of the charge as an "indictment," and at other times referred to it as an "information." One of the references to an "information" appeared in the form of verdict which was returned by the jury. This form of verdict reads: "We, the Jury, find the defendant guilty in the manner and form as charged in the *information*." (Emphasis added).

Defendant's position is that a reference to the formal charge in the verdict as an "information" constitutes a jurisdictional defect in the conviction by reason of the provisions of § 40A–1–11, N.M.S.A.1953. This section of our statutes provides, in part:

"40A–1–11. *Criminal sentence permitted only upon conviction.*—No person indicted or charged by information or complaint of any crime shall be sentenced therefor, unless he has been legally convicted of the crime in a court having competent jurisdiction of the cause and of the person. No person shall be convicted of a crime unless found guilty by the verdict of the jury, accepted and recorded by the court; * * *."

Defendant cites no authority for his position. There can be no doubt that he was tried on the charge of armed robbery; that the jury was fully instructed as to the law on this charge; and that the jury could not possibly have intended to find him guilty of any other charge.

■ The trial court unquestionably had jurisdiction over the person of defendant and over the subject matter of the offense charged. The inadvertent use of the word "information" does not raise a jurisdictional question.

The precise error here involved was also involved in State v. McBride, 231 S.W. 592 (Mo.1921), and State v. Taylor, 261 Mo. 210, 168 S.W. 1191 (1914). Like errors were involved in People v. Shambley, 4 Ill.2d 38, 122 N.E.2d 172 (1954); Buckley v. State, 108 Tex.Cr.R. 60, 298 S.W. 900 (1927); Jackson v. State, 37 Tex.Cr. R. 612, 40 S.W. 498 (1897); State v. McCormick, 56 Wash. 469, 105 P. 1037 (1909). The courts in all of these cases concluded that the errors were harmless. We reach the same conclusion.

The judgment of conviction, and the sentence imposed, should be affirmed.

It is so ordered.

SPIESS, C. J., and WOOD, J., concur.